IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUTH SHAMIR, | : | Consolidated Under |
| | : | MDL DOCKET NO 875 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. |
| AGILENT TECHNOLOGIES, INC., et al., | : | 08-76816 |
| | : | |
| Defendants. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    APRIL 5, 2010

Plaintiff, Ruth Shamir, commenced this action on behalf of her deceased husband, Mordechai Shamir, for his exposure to asbestos-containing products. Mr. Shamir died of mesothelioma on April 7, 2007. (Pl.'s Br. 2.) Plaintiff brought the action against Hewlett-Packard and Agilent Technologies (collectively "HP") as successors in interest to the original manufacturers of the products in question. (Pl.'s Br. 1.) On January 5, 2010, Defendant filed a motion to dismiss on the grounds that this claim is barred by the New Jersey Workers' Compensation Act ("NJWCA") by virtue of Mr. Shamir's status as an employee of HP during the time of the exposure. Before the Court is Defendant's motion to dismiss, and Plaintiff's response in opposition to Defendant's motion.

I. BACKGROUND

The products in question are gas chromatographs that contain thermal conductivity detectors and electric wiring, both of which were insulated by asbestos. Beginning in 1961, a company called F&M Scientific Company (F&M) began manufacturing these devices. In 1965, HP acquired F&M and F&M was merged out of existence. HP took over the manufacturing of the devices and continued to develop the line of business it acquired from F&M. In 1999, HP separated this part of its operations to create Agilent, currently the world's largest manufacturer and distributor of gas chromatograph columns.

Mr. Shamir was hired by HP in 1966 as an electronics technician. In 1968, he became a lead electronics technician in the HP repair center in Paramus, New Jersey, where he worked until 1973. He was then promoted to engineer, and retired as an employee of Agilent in 2001. During his tenure at the repair center, his job was to repair the thermal conductivity detectors that were manufactured by F&M. He was responsible for unpacking, disassembling, cleaning, and re-insulating the devices, and was exposed to dust and fiber during each of these stages.

Plaintiff asserts that Mr. Shamir's injuries were caused by products that were manufactured by F&M and put into the stream of commerce before HP acquired F&M. Therefore, Plaintiff seeks to hold HP liable as successors in interest to the

2

manufacturer, and argues that this claim is not barred by the NJWCA because of HP's "dual capacity" as both a manufacturer and an employer. Plaintiff concedes that New Jersey courts have reached divergent results when applying the dual capacity doctrine, but notes that they have applied it to circumstances that are factually similar to the instant case. In sum, Plaintiff asks this court to deny Defendants' motion to dismiss or, alternatively, to delay a ruling until discovery can be completed regarding the manufacturing of the injurious products at issue.

Defendants, in response, argue that the injuries alleged fall within the purview of the NJWCA because they were "arising out of and in the course of employment." N.J.S.A. § 34:15-7. Defendants assert that the dual capacity doctrine is disfavored, and perhaps even inapplicable, under New Jersey law. Because Mr. Shamir's claims fall under the workers' compensation statute, Defendants argue, Plaintiff's exclusive remedy is exists under the provisions of the NJWCA. For the reasons set forth below, Defendants' motion is granted and Plaintiff's claim is dismissed.

II. LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn

therefrom, and view them in the light most favorable to the nonmoving party," however, the Court need not credit bald assertions and legal conclusions. DeBenedictis v. Merrill Lynch & Co., Inc., 492 F.3d 209, 215 (3d Cir. 2007) (quotation ommitted); Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (stating that the complaint's "'[f]actual allegations must be enough to raise the right to relief above the speculative level.'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007)).

The Supreme Court recently expounded on the standard for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). Iqbal established that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (citing Twombly, 550 U.S. at 570 (2007)).

III. ANALYSIS

The dual capacity doctrine is an exception to the immunity statutorily conferred on employers in exchange for their presumed liability for work related injuries. This exception, however, is not easily obtained. "The unmistakable intention of the legislature was that the sole liability of an employer for a work related injury of an employee was that provided in the Act." Holliday v. Personal Products Co., 939 F. Supp. 402, 409 (E.D.

4

Pa. 1996), aff'd without opinion, 114 F.3d 1172 (3d Cir. 1997) (quoting Ramos v. Browning Ferris Indus. of South Jersey, Inc., 510 A.2d 1152, 1155 (N.J. 1986)). New Jersey courts have favored an "economic reality" approach over the dual capacity doctrine. See Volb v. G.E. Capital Corp., 651 A.2d 1002, 1008 (N.J. Sup. Ct. 1995) (holding that the "corporate identity of affiliated corporations should not be disregarded"). The economic reality approach provides that if the alleged tortfeasor is "in fact the same corporate entity as the employer," the tort claim is barred by the NJWCA. Holliday, 939 F. Supp. at 410. Therefore, under New Jersey law, an employee's tort claim is barred when, as the result of a merger, the employer is in fact the same corporate entity as the manufacturer of the injury-causing products. See id.

The Supreme Court of New Jersey determined that the economic reality approach reflects the reciprocal nature of the benefits of New Jersey's workers' compensation scheme better than the dual capacity doctrine. In Volb, Plaintiff was employed by J.H. Reid and was fatally injured by an employee of an affiliated company, T.D.E. 651 A.2d at 1003. The two companies were owned by the same four principals, but were separate corporate entities. Id. The court held that T.D.E. was not immune from tort liability by virtue of their affiliation with Plaintiff's employer. Id. at 1010. As such, business owners have a range of

possibilities for their corporate structure, and they cannot reap the benefits of separate corporate divisions without accepting the corresponding burdens. Id. at 1008. One of the burdens is that a corporation may not share the immunity provided by the NJWCA to a subsidiary corporation. Id. at 1010.

The Third Circuit has extrapolated from Volb's economic reality approach to find that if the employer and the tortfeasor are the same corporate entity, Plaintiff is barred from suit under the exclusivity provision of the NJWCA. Holliday, 939 F. Supp. 402. In Holliday, the Plaintiff was injured at work by a machine manufactured by Personal Products Company ("PPC"). Her injuries occurred just a few months after PPC merged with her employer's company. Id. at 404. The court held that Plaintiff's claim was barred by the NJWCA because,"as a matter of economic reality it demands a second recovery from the employer contrary to the statutory policy of a single recovery under the Workers' Compensation Act." Id. at 408 (internal citations omitted).

The "dual capacity" approach, however, still finds some support in New Jersey case law. In Petrocco v. AT&T Teletype, Inc., 642 A.2d 1072 (N.J. Super. Ct. Law. Div. 1994), the court allowed the Plaintiff to recover against her employer, AT&T, for injuries sustained from a defective keyboard, which they manufactured. Id. at 1073. The court held that the NJWCA did not "intend to immunize a third-party manufacturer" when they had

introduced harmful products into the stream of commerce and later merged with the employer company. Id. at 1074. While the reasoning of Petrocco has been "disfavored, if not outright disapproved," it has never been expressly overruled. Kaczorowska v. Nat'l Envelope Corp., 777 A.2d 941, 948 (App. Div. 2001). Indeed, the Kaczorowska court ultimately represented that the central holding of Petrocco is still intact. See id. at 949 (distinguishing Plaintiff's claim from Petrocco because there was no manufacturer/employer merger at issue and stating that, "Petrocco informs that employers may be held liable for torts of defunct 'third-party manufacturers' that had ceased to be third parties and had become unincorporated parts of the employer long before the injury occurred and indeed before the employment relationship even began").

Notwithstanding the holding of Petrocco, the Supreme Court of New Jersey and the Third Circuit Court of Appeals have favored the economic reality approach, and this court must follow their lead. The instant case is factually indistinguishable from Holliday. In both Holliday and the instant case there was a merger of the employer and manufacturer, shortly after which Plaintiff was harmed by products that were the sole responsibility of their employer. In the instant case, the economic reality is that the manufacturer of the harmful materials, F&M, was merged out of existence in 1965 and HP is the

sole corporate entity responsible for both workers' compensation and tort liability.  Indeed, Plaintiff is currently pursuing a workers' compensation claim against Defendants.

The court takes notice of Plaintiff's argument, and the policy articulated in Petrocco, that the economic reality doctrine will insulate some manufacturers from liability and deprive some employees of a means of redress for their injuries.  Indeed, if any other company had manufactured the gas chromatographs and thermal conductivity detectors in question, Plaintiff could potentially recover under both NJWCA and tort law.  Or, if HP had never acquired F&M, Plaintiff would be poised to recover from both entities.  Taking the facts of Holliday as an example, Plaintiff was injured just three months after the merger; if her injury had taken place earlier, she would have had two potential sources of recovery.

Nevertheless, as seen in Volb, respecting the integrity of the corporate structure has advantages for plaintiffs as well, as it prevents unincorporated entities from hiding behind each other's contributions to a workers' compensation scheme.  Ultimately, the quid pro quo that the NJWCA is designed to promote (no-fault liability for employers in exchange for immunity from tort suits) is best served by the economic reality approach.  Workers' compensation must remain the exclusive remedy for injuries sustained in the course of employment.  When a

corporate entity is simultaneously an employer and a manufacturer of harmful products, workers' compensation serves to limit its tort liability with respect to its employees.

IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted. Plaintiff's request for additional discovery regarding F&M's manufacturing is denied as moot. Plaintiff has asserted that F&M was the exclusive manufacturer of the products at issue and additional discovery on this point would not produce any information that could change the above analysis.

An appropriate order follows.